**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **RE NECTAR, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **v.** | § | |
| | § | |
| **SHALOM SCHWARTZ and YAKOV** | § | |
| **EISENBACH,** | § | |
| | § | |
| **DEFENDANTS** | § | |

## COMPLAINT

Plaintiff RE Nectar, Inc. ("**Plaintiff**" or "**Nectar**") files this Complaint against individual Defendants Shalom Schwartz ("**Schwartz**") and Yakov Eisenbach ("**Eisenbach**") (collectively "**Guarantors**"), alleging as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff RE Nectar, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.

2.      Defendant Schwartz is a resident of Airmont, New York.

3.      Defendant Eisenbach is a resident of Spring Valley, New York.

4.      Guarantors agreed to submit to the jurisdiction and venue of this Court and to service by certified or registered mail, return receipt requested. (See

1

Paragraphs 33-35, 70-72, 104-106, and 131-133 below.)

5.  This Court has subject matter jurisdiction of the case pursuant to 28 U.S.C. § 1332 and personal jurisdiction over Defendants under the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91.

6.  The matter in controversy in this case exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

7.  Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8.  Jurisdiction and venue are further proper in this court because the contracts at issue in this case state that they shall be construed in accordance with the laws of Georgia, that exclusive venue for any legal proceedings arising out the agreements shall be the appropriate state or federal court in Atlanta, Georgia, and that the parties agree to the jurisdiction of such courts.

## FACTUAL BACKGROUND

### I.    Background of parties' relationship

9.  Nectar provides funding options to real estate owners and operators.

10.  Guarantors are the founders of Lexington Property Group, a company that specializes in acquiring multi-unit properties and revitalizing them.

11.  In July of 2024, Nectar agreed to provide funding to Lexington Property

group through capital contribution and in turn Nectar was granted a preferred equity position with respect to several properties owned and operated by Guarantors and/or companies that Grantors formed.

## II.    Broad Street and Oakwood Defaults

### A.    Broad St LLC Amended Operating Agreement

12.    On or about December 21, 2020, Guarantors formed an LLC in New York called "15-19 Broad St LLC" (hereinafter "**Broad St LLC**").

13.    Guarantors formed the LLC to own and operate certain property located at 15-19 Broad Street, Haverstraw, NY.

14.    In July 2024, Nectar agreed to fund Broad St LLC by way of a capital contribution of $220,000.

15.    To provide Nectar a return on the capital contribution, the parties entered into an Amended and Restated Limited Liability Company Operating Agreement, a true and accurate copy of which is attached hereto as **Exhibit 1** and referred to hereinafter as "**Broad St LLC Amended OA**".

16.    The Broad St LLC Amended OA names Nectar as the "Preferred Member" and Guarantors as "Common Members."

17.    On or about July 22, 2024, Nectar made a $220,000 capital contribution/additional funding to Broad St LLC.

3

18.     Pursuant to Exhibit B of the Broad St LLC Amended OA, Broad St LLC was obligated to make Preferred Distributions of $5,291.67 to Nectar starting on August 21, 2024 and continuing on the 21st of each month through March 21, 2027.

19.     Pursuant to Exhibit B of the Broad St LLC Amended OA, Broad St LLC was also obligated to make a Preferred Distribution of $170,291.67 to Nectar on April 21, 2027.

20.     Pursuant to the Broad St LLC Amended OA, failure to make a Preferred Distribution (including payment of any interest thereon) for more than sixty days from the date such payment was due and payable constitutes a "Default".

21.     Pursuant to the Broad St LLC Amended OA, upon the occurrence of any Default, Nectar has the right to declare all Preferred Distributions immediately due and payable.

22.     Pursuant to the Broad St LLC Amended OA, upon the occurrence of any Default, Broad St LLC agreed to pay default interest at the rate of 20% per annum.

23.     Guarantors each signed the Broad St LLC Amended OA twice.

24.     The first signature by each Guarantor on the Broad St LLC Amended OA was as a Common Member.

4

25.    The second signature by each Guarantor on the Broad St LLC Amended OA was directly under a statement that:

the undersigned hereby guarantees all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees and interest related thereto.

**B.    Schwartz and Eisenbach Guaranteed Broad Street Payments**

26.    On or about July 22, 2024, both Guarantors signed a "Guaranty", true and accurate copies of which are attached hereto collectively as **Exhibit 2** and referred to hereinafter as "**Broad St LLC Guaranties**".

27.    The Broad St LLC Guaranties state that the Preferred Member, Nectar, was unwilling to enter into the Broad St LLC Amended OA unless Guarantors guaranteed prompt and complete payment and performance of all obligations of Broad St LLC.

28.    The Broad St LLC Guaranties were entered into as an inducement to Nectar to make the capital contribution to Broad St LLC.

29.    Pursuant to the Broad St LLC Guaranties, each of the Guarantors:

irrevocably, absolutely and unconditionally guarantees to Preferred Member prompt, full, faithful and complete payment and performance and observance of all of the Company's obligations under all agreements now existing or hereafter entered into by and between Preferred Member and the Company, including the Agreement; and Guarantor unconditionally covenants to Preferred Member that if default or breach shall at any time be made by the Company in the

Company's obligations under the Agreement, Guarantor shall perform (or cause to be performed) the Company's obligations under the Agreement and pay all damages and other amounts stipulated in this Guaranty and the Agreement with respect to the nonperformance of the Company's obligations under the Agreement, or any of them.

30. Pursuant to the Broad St LLC Guaranties, the Guarantors agreed to pay all costs and expenses (including, without limitation, attorney's fees) incurred by Preferred Member in connection with any actions commenced by Preferred Member to enforce its rights.

31. Pursuant to the Broad St LLC Guaranties, the Guarantors agreed that their obligation is unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Company and Preferred Member, or the existence of any defense, setoff, or counterclaim which the Company may assert.

32. The Broad St LLC Guaranties provide that they are governed by, and constructed in accordance with, the laws of the State of Georgia without regard to principles of conflicts of law.

33. Pursuant to the Broad St LLC Guaranties, the Guarantors submit to the exclusive jurisdiction and venue of the state or federal courts having jurisdiction over Atlanta, Georgia of any claims or actions arising, directly or indirectly, out of or related to the Guaranty.

34. Pursuant to the Broad St LLC Guaranties, the Guarantors stipulate that

6

the venues referenced in the Guaranties are convenient.

35.     Pursuant to the Broad St LLC Guaranties, the Guarantors agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court.

**C.     Broad St LLC Used the Expense Reserve to Make Two Consecutive Preferred Payments**

36.     Broad St LLC made Preferred Distributions of $5,291.67 to Nectar starting on August 21, 2024 and each month on or about the 21st through November 2025, each funded by ACH withdrawal from Broad St LLC's bank account as required by Section 12(d) of the Broad St LLC Amended OA.

37.     Beginning in December 2025, Broad St LLC failed to fund its monthly Preferred Distributions from its bank account.

38.     The December 2025 and January 2026 Preferred Distributions were each drawn from the Expense Reserve held in Nectar's account, constituting two consecutive draws from the Expense Reserve.

39.      Pursuant to Section 13(a)(i) of the Broad St LLC Amended OA, it is an express Event of Default if "the Expense Reserve is used for two consecutive Preferred Distributions."

7

40. The December 2025 and January 2026 draws constitute two consecutive uses of the Expense Reserve, triggering an immediate Event of Default as of January 21, 2026 with no cure period.

41. In the alternative, pursuant to Section 12(e) of the Broad St LLC Amended OA, the February 2026 and March 2026 Preferred Distributions were not funded from Broad St LLC's bank account, and no Expense Reserve remained available to cover them.

42. Broad St LLC's failure to make those distributions from its bank account as required by Section 12(d) constitutes an additional and independent Default under Section 12(e).

43. The Event of Default triggered Nectar's rights and remedies under the Broad St LLC Amended OA, including the right to declare all remaining Preferred Distributions immediately due and payable, and to charge default interest at the rate of 20% per annum on all outstanding amounts from January 21, 2026, in lieu of any late fees pursuant to Section 12(d).

44. As of March 23, 2026, Defendants owe Nectar $247,723.64, which includes a default fee of 20% per annum as permitted under the Broad St LLC Amended OA.

**D.  Oakwood LLC Amended Operating Agreement**

8

45.     On or about January 28, 2022, Guarantors formed an LLC in New York called "171 Oakwood LLC" (hereinafter "**Oakwood LLC**").

46.     Guarantors formed the LLC to own and operate certain property located at 171 Oakwood Ave, Troy, NY.

47.     In July 2024, Nectar agreed to fund Oakwood LLC by way of a capital contribution of $210,000.

48.     To provide Nectar a return on the capital contribution, the parties entered into an Amended and Restated Limited Liability Company Operating Agreement, a true and accurate copy of which is attached hereto as **Exhibit 3** and referred to hereinafter as "**Oakwood LLC Amended OA**".

49.     The Oakwood LLC Amended OA, names Nectar as the "Preferred Member" and Guarantors as "Common Members."

50.     On or about July 31, 2024, Nectar made a $210,000 capital contribution/additional funding to Oakwood LLC.

51.     Pursuant to Exhibit B of the Oakwood LLC Amended OA, Oakwood LLC was obligated to make Preferred Distributions of $7,787.50 to Nectar starting on August 21, 2024 and continuing on the 21st of each month through June 21, 2025.

52.     Pursuant to Exhibit B of the Oakwood LLC Amended OA, Oakwood LLC was also obligated to make a Preferred Distribution of $165,287.50 to Nectar

on July 21, 2025.

53.     Pursuant to the Oakwood LLC Amended OA, failure to make a Preferred Distribution (including payment of any interest thereon) for more than sixty days from the date such payment was due and payable constitutes a "Default".

54.     Pursuant to the Oakwood LLC Amended OA, upon the occurrence of any Default, Nectar has the right to declare all Preferred Distributions immediately due and payable.

55.     Pursuant to the Oakwood LLC Amended OA, upon the occurrence of any Default, Oakwood LLC agreed to pay default interest at the rate of 20% per annum.

56.     Guarantors each signed the Oakwood LLC Amended OA twice.

57.     The first signature by each Guarantor on the Oakwood LLC Amended OA was as a Common Member.

58.      The second signature by each Guarantor on the Oakwood LLC Amended OA was directly under a statement that:

> the undersigned hereby guarantees all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees and interest related thereto.

59.     On or about September 9, 2025, the members of Oakwood LLC agreed to Amended the Oakwood LLC Amended OA, a true and accurate copy of which is

attached hereto as **Exhibit 4** and referred to hereinafter as "**First Amendment to Oakwood LLC Amended OA**".

60.    The purpose of the First Amendment to Oakwood LLC Amended OA was to revise the Preferred Distributions schedule.

61.    Pursuant to Exhibit A of the First Amendment to Oakwood LLC Amended OA, Oakwood LLC was obligated to make Preferred Distributions of $7,787.50 to Nectar starting on September 21, 2025 and continuing on the 21st of each month through January 21, 2026.

62.    Pursuant to Exhibit A of the First Amendment to Oakwood LLC Amended OA, Oakwood LLC was also obligated to make a Preferred Distribution of $146,825 to Nectar on February 21, 2026.

**E.    Schwartz and Eisenbach Guaranteed Oakwood Payments**

63.    On or about July 31, 2024, both Guarantors signed a "Guaranty", true and accurate copies of which are attached hereto collectively as **Exhibit 5** and referred to hereinafter as "**Oakwood LLC Guaranties**".

64.    The Oakwood LLC Guaranties state that the Preferred Member, Nectar, was unwilling to enter into the Oakwood LLC Amended OA unless Guarantors guaranteed prompt and complete payment and performance of all obligations of Oakwood LLC.

11

65.    The Oakwood LLC Guaranties were entered into as an inducement to Nectar to make the capital contribution to Oakwood LLC.

66.    Pursuant to the Oakwood LLC Guaranties, each of the Guarantors:

irrevocably, absolutely and unconditionally guarantees to Preferred Member prompt, full, faithful and complete payment and performance and observance of all of the Company's obligations under all agreements now existing or hereafter entered into by and between Preferred Member and the Company, including the Agreement; and Guarantor unconditionally covenants to Preferred Member that if default or breach shall at any time be made by the Company in the Company's obligations under the Agreement, Guarantor shall perform (or cause to be performed) the Company's obligations under the Agreement and pay all damages and other amounts stipulated in this Guaranty and the Agreement with respect to the nonperformance of the Company's obligations under the Agreement, or any of them.

67.    Pursuant to the Oakwood LLC Guaranties, the Guarantors agreed to pay all costs and expenses (including, without limitation, attorney's fees) incurred by Preferred Member in connection with any actions commenced by Preferred Member to enforce its rights.

68.    Pursuant to the Oakwood LLC Guaranties, the Guarantors agreed that their obligation is unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Company and Preferred Member, or the existence of any defense, setoff or counterclaim which the Company may assert.

69.    The Oakwood LLC Guaranties provide that they are governed by, and constructed in accordance with, the laws of the State of Georgia without regard to

12

principles of conflicts of law.

70.    Pursuant to the Oakwood LLC Guaranties, the Guarantors submit to the exclusive jurisdiction and venue of the state or federal courts having jurisdiction over Atlanta, Georgia of any claims or actions arising, directly or indirectly, out of or related to the Guaranty.

71.    Pursuant to the Oakwood LLC Guaranties, the Guarantors stipulate that the venues referenced in the Guaranties are convenient.

72.    Pursuant to the Oakwood LLC Guaranties, the Guarantors agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court.

**F.    Oakwood LLC Used the Expense Reserve to Make Two Consecutive Preferred Payments**

73.    Oakwood LLC made Preferred Distributions of $7,787.50 to Nectar starting on August 21, 2024 and each month on or about the 21st through November 2025, each funded by ACH withdrawal from Oakwood LLC's bank account as required by Section 12(d) of the Oakwood LLC Amended OA.

74.    Beginning in December 2025, Oakwood LLC failed to fund its monthly Preferred Distributions from its bank account.

13

75.    The December 2025 and January 2026 Preferred Distributions were each drawn from the Payment Reserve held in Nectar's account, constituting two consecutive draws from the Payment Reserve.

76.    Pursuant to Section 13(a)(i) of the Oakwood LLC Amended OA, it is an express Event of Default if "the Expense Reserve is used for two consecutive Preferred Distributions."

77.    The December 2025 and January 2026 draws constitute two consecutive uses of the Payment Reserve, triggering an immediate Event of Default as of January 21, 2026 with no cure period.

78.    In the alternative, pursuant to Section 12(e) of the Oakwood LLC Amended OA, as amended by the First Amendment to Oakwood LLC Amended OA, Oakwood LLC was obligated to make a Preferred Distribution of $146,825 on February 21, 2026.

79.    Oakwood LLC failed to make this balloon payment, and no Payment Reserve remained available to cover it.

80.    This failure constitutes an additional and independent Default under Section 12(e).

81.    The Event of Default triggered Nectar's rights and remedies under the Oakwood LLC Amended OA, including the right to declare all remaining Preferred

Distributions immediately due and payable, and to charge default interest at the rate of 20% per annum on all outstanding amounts from January 21, 2026, in lieu of any late fees pursuant to Section 12(d).

82.    As of March 23, 2026, Defendants owe Nectar $144,541.06, which includes a default fee of 20% per annum as permitted under the Oakwood LLC Amended OA.

### III.   Grand Pointe, Mountain Brook, and Omnibus Agreement Defaults

#### A.    Grand Pointe LLC Operating Agreement

83.    On or about July 28, 2022, Guarantors formed an LLC in New York called "Grand Pointe Apartments LLC" (hereinafter "**Grand Pointe LLC**").

84.    Guarantors formed the LLC to own and operate certain property located at 161 Clubhouse Drive, Poughkeepsie, NY.

85.    In July 2024, Nectar agreed to fund Grand Pointe LLC by way of a capital contribution of $1,500,000.

86.    To provide Nectar a return on the capital contribution, the parties entered into an Amended and Restated Limited Liability Company Operating Agreement, a true and accurate copy of which is attached hereto as **Exhibit 6** and referred to hereinafter as "**Grand Pointe LLC Amended OA**".

87.    The Grand Pointe LLC Amended OA names Nectar as the "Preferred

Member" and Guarantors as "Common Members."

88. On or about August 5, 2024, Nectar made a $1,500,000 capital contribution/additional funding to Grand Pointe LLC.

89. Pursuant to Exhibit B of the Grand Pointe LLC Amended OA, Grand Pointe LLC was obligated to make Preferred Distributions of $42,083.33 to Nectar starting on August 21, 2024 and continuing on the 21st of each month through June 21, 2027.

90. Pursuant to Exhibit B of the Grand Pointe LLC Amended OA, Grand Pointe LLC was also obligated to make a Preferred Distribution of $792,083.33 to Nectar on July 21, 2027.

91. Pursuant to the Grand Pointe LLC Amended OA, failure to make a Preferred Distribution (including payment of any interest thereon) for more than sixty days from the date such payment was due and payable constitutes a "Default".

92. Pursuant to the Grand Pointe LLC Amended OA, upon the occurrence of any Default, Nectar has the right to declare all Preferred Distributions immediately due and payable.

93. Pursuant to the Grand Pointe LLC Amended OA, upon the occurrence of any Default, Grand Pointe LLC agreed to pay default interest at the rate of 20% per annum.

16

94. Guarantors each signed the Grand Pointe LLC Amended OA twice.

95. The first signature by each Guarantor on the Grand Pointe LLC Amended OA was as a Common Member.

96. The second signature by each Guarantor on the Grand Pointe LLC Amended OA was directly under a statement that:

> the undersigned hereby guarantees all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees and interest related thereto.

**B.    Schwartz and Eisenbach Guaranteed Grand Pointe Payments**

97. On or about August 5, 2024, both Guarantors signed a "Guaranty", true and accurate copies of which are attached hereto collectively as **Exhibit 7** and referred to hereinafter as "**Grand Pointe LLC Guaranties**".

98. The Grand Pointe LLC Guaranties state that the Preferred Member, Nectar, was unwilling to enter into the Grand Pointe LLC Amended OA unless Guarantors guaranteed prompt and complete payment and performance of all obligations of Grand Pointe LLC.

99. The Grand Pointe LLC Guaranties were entered into as an inducement to Nectar to make the capital contribution to Grand Pointe LLC.

100. Pursuant to the Grand Pointe LLC Guaranties, each of the Guarantors: irrevocably, absolutely and unconditionally guarantees to Preferred

Member prompt, full, faithful and complete payment and performance and observance of all of the Company's obligations under all agreements now existing or hereafter entered into by and between Preferred Member and the Company, including the Agreement; and Guarantor unconditionally covenants to Preferred Member that if default or breach shall at any time be made by the Company in the Company's obligations under the Agreement, Guarantor shall perform (or cause to be performed) the Company's obligations under the Agreement and pay all damages and other amounts stipulated in this Guaranty and the Agreement with respect to the nonperformance of the Company's obligations under the Agreement, or any of them.

101.   Pursuant to the Grand Pointe LLC Guaranties, the Guarantors agreed to pay all costs and expenses (including, without limitation, attorney's fees) incurred by Preferred Member in connection with any actions commenced by Preferred Member to enforce its rights.

102.   Pursuant to the Grand Pointe LLC Guaranties, the Guarantors agreed that their obligation is unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Company and Preferred Member, or the existence of any defense, setoff or counterclaim which the Company may assert.

103.   The Grand Pointe LLC Guaranties provide that they are governed by, and constructed in accordance with, the laws of the State of Georgia without regard to principles of conflicts of law.

104.   Pursuant to the Grand Pointe LLC Guaranties, the Guarantors submit to the exclusive jurisdiction and venue of the state or federal courts having

jurisdiction over Atlanta, Georgia of any claims or actions arising, directly or indirectly, out of or related to the Guaranty.

105. Pursuant to the Grand Pointe LLC Guaranties, the Guarantors stipulate that the venues referenced in the Guaranties are convenient.

106. Pursuant to the Grand Pointe LLC Guaranties, the Guarantors agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court.

### C. Grand Pointe LLC Failed to Make Preferred Payments

107. Grand Pointe LLC made full Preferred Distributions of $42,083.33 to Nectar starting on August 21, 2024 and each month on or about the 21st through November 2025.

108. Beginning in or around December 2025, Grand Pointe LLC ceased making the full monthly Preferred Distributions.

109. Grand Pointe LLC's failure to pay the monthly Preferred Distributions constitutes a Default as defined in the Grand Pointe LLC Amended OA.

110. The Default by Grand Pointe LLC triggered Nectar's rights and remedies under the Grand Pointe LLC Amended OA, including the right to

immediate payment by Grand Pointe LLC and Guarantor of the remaining amount owed in full.

### D.    Mountain Brook Gardens LLC Operating Agreement

111.    On or about July 16, 2019, Guarantors formed an LLC in New York called "Mountain Brook Gardens LLC" (hereinafter "**Mountain Brook LLC**").

112.    Guarantors formed the LLC to own and operate certain property located at 134 Innis Avenue, Poughkeepsie, NY.

113.    In February 2025, Nectar agreed to fund Mountain Brook LLC by way of a capital contribution of $1,500,000.

114.    To provide Nectar a return on the capital contribution, the parties entered into an Amended and Restated Limited Liability Company Operating Agreement, a true and accurate copy of which is attached hereto as **Exhibit 8** and referred to hereinafter as "**Mountain Brook LLC Amended OA**".

115.    The Mountain Brook LLC Amended OA names Nectar as the "Preferred Member" and Guarantors as "Common Members,"

116.    On or about February 24, 2025, Nectar made a $1,500,000 capital contribution/additional funding to Mountain Brook LLC.

117.    Pursuant to Exhibit B of the Mountain Brook LLC Amended OA, Mountain Brook LLC was obligated to make Preferred Distributions of $41,125 to

20

Nectar starting on March 21, 2025 and continuing on the 21st of each month through February 21, 2030.

118. Pursuant to the Mountain Brook LLC Amended OA, failure to make a Preferred Distribution (including payment of any interest thereon) for more than sixty days from the date such payment was due and payable constitutes a "Default".

119. Pursuant to the Mountain Brook LLC Amended OA, upon the occurrence of any Default, Nectar has the right to declare all Preferred Distributions immediately due and payable.

120. Pursuant to the Mountain Brook LLC Amended OA, upon the occurrence of any Default, Mountain Brook LLC agreed to pay default interest at the rate of 20% per annum.

121. Guarantors each signed the Mountain Brook LLC Amended OA twice.

122. The first signature by each Guarantor on the Mountain Brook LLC Amended OA was as a Common Member.

123. The second signature by each Guarantor on the Mountain Brook LLC Amended OA was directly under a statement that:

> the undersigned hereby guarantees all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees and interest related thereto.

**E.    Schwartz and Eisenbach Guaranteed Mountain Brook Payments**

21

124. On or about February 25, 2025, both Guarantors signed a "Guaranty", true and accurate copies of which are attached hereto collectively as **Exhibit 9** and referred to hereinafter as "**Mountain Brook LLC Guaranties**".

125. The Mountain Brook LLC Guaranties state that the Preferred Member, Nectar, was unwilling to enter into the Mountain Brook LLC Amended OA unless Guarantors guaranteed prompt and complete payment and performance of all obligations of Mountain Brook LLC.

126. The Mountain Brook LLC Guaranties were entered into as an inducement to Nectar to make the capital contribution to Mountain Brook LLC.

127. Pursuant to the Mountain Brook LLC Guaranties, each of the Guarantors:

> irrevocably, absolutely and unconditionally guarantees to Preferred Member prompt, full, faithful and complete payment and performance and observance of all of the Company's obligations under all agreements now existing or hereafter entered into by and between Preferred Member and the Company, including the Agreement; and Guarantor unconditionally covenants to Preferred Member that if default or breach shall at any time be made by the Company in the Company's obligations under the Agreement, Guarantor shall perform (or cause to be performed) the Company's obligations under the Agreement and pay all damages and other amounts stipulated in this Guaranty and the Agreement with respect to the nonperformance of the Company's obligations under the Agreement, or any of them.

128. Pursuant to the Mountain Brook LLC Guaranties, the Guarantors agreed to pay all costs and expenses (including, without limitation, attorney's fees)

22

incurred by Preferred Member in connection with any actions commenced by Preferred Member to enforce its rights.

129. Pursuant to the Mountain Brook LLC Guaranties, the Guarantors agreed that their obligation is unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Company and Preferred Member, or the existence of any defense, setoff or counterclaim which the Company may assert.

130. The Mountain Brook LLC Guaranties provide that they are governed by, and constructed in accordance with, the laws of the State of Georgia without regard to principles of conflicts of law.

131. Pursuant to the Mountain Brook LLC Guaranties, the Guarantors submit to the exclusive jurisdiction and venue of the state or federal courts having jurisdiction over Atlanta, Georgia of any claims or actions arising, directly or indirectly, out of or related to the Guaranty.

132. Pursuant to the Mountain Brook LLC Guaranties, the Guarantors stipulate that the venues referenced in the Guaranties are convenient.

133. Pursuant to the Mountain Brook LLC Guaranties, the Guarantors agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process

against them, without the necessity for service by any other means provided by statute or rule of court.

### F.     Mountain Brook LLC Failed to Make Preferred Payments

134.   Mountain Brook LLC made full Preferred Distributions of $41,125.00 to Nectar starting on March 21, 2025 and each month on or about the 21st through November 2025.

135.   Beginning in or around December 2025, Mountain Brook LLC ceased making the full monthly Preferred Distributions.

136.   Mountain Brook LLC's failure to pay the monthly Preferred Distributions constitutes a Default as defined in the Mountain Brook LLC Amended OA.

137.   The Default by Mountain Brook LLC triggered Nectar's rights and remedies under the Mountain Brook LLC Amended OA, including the right to immediate payment by Mountain Brook LLC and Guarantor of the remaining amount owed in full.

### G.     The Parties Entered into an Omnibus Agreement

138.   On or about June 17, 2025, Guarantors, Grand Pointe LLC, and Mountain Brook LLC entered into an Omnibus Agreement with Nectar. (A true and accurate copy of the Omnibus Agreement is attached hereto as **Exhibit 10** and

referred to hereinafter as "**Omnibus Agreement**.")

139. Guarantors, Grand Pointe LLC, and Mountain Brook LLC are identified as "Debtors" in the Omnibus Agreement.

140. On or about June 17, 2025, the members of Grand Pointe LLC also agreed to amend the Grand Pointe LLC Amended OA, a true and accurate copy of which is attached hereto as **Exhibit 11** and referred to hereinafter as "**First Amendment to Grand Pointe LLC Amended OA**".

141. On or about June 17, 2025, the members of Mountain Brook LLC also agreed to amend the Mountain Book LLC Amended OA, a true and accurate copy of which is attached hereto as **Exhibit 12** and referred to hereinafter as "**First Amendment to Mountain Brook LLC Amended OA**" and, collectively with the First Amendment to Grand Pointe LLC Amended OA referred to hereinafter as "**First Amendments to Amended OAs**."

142. The purpose of the First Amendments to Amended OAs was to restructure the indebtedness of Grand Pointe LLC and Mountain Brook LLC.

143. The First Amendments to Amended OAs specifically refers to the Omnibus Agreement and states that it, among other things, cross-collateralizes all agreements provided for the benefit of Nectar by Debtors, as defined in the Omnibus Agreement.

25

144.   Grand Pointe LLC and Mountain Brook LLC agreed to enter into the Omnibus Agreement as a condition precedent to Nectar agreeing to restructure the indebtedness by Grand Pointe LLC and Mountain Brook LLC and for Nectar to provide new investments in additional properties identified in the First Amendments to Amended OAs as "the Golden Portfolio Entities."

145.   The Golden Portfolio Entities are defined in and identified as "Debtors" in the Omnibus Agreement.

146.   The Golden Portfolio Entities are or were owned and/or operated by Guarantors and/or companies formed by Guarantors.

147.   The Omnibus Agreement states that the indebtedness of Grand Pointe LLC and Mountain Brook LLC is included in the "Total Principal Amount" due to Nectar.

148.   The Omnibus Agreement states that all collateral security given (directly or indirectly) to secure the indebtedness of the Total Principal Amount from Nectar to Debtors shall secure all indebtedness of the Total Principal Amount and all other obligations of Debtors to Nectar of whatsoever nature, past, present, or future.

149.   The Omnibus Agreement states that all such indebtedness in the Total Principal Amount is cross-collateralized.

150. The Omnibus Agreement states that all such indebtedness in the Total Principal Amount is "cross-defaulted" with each other, "meaning that a default under any obligation of the Debtors to Nectar shall constitute a default under all such obligations, allowing Nectar to exercise any and all rights and remedies available under the agreements governing such obligations" (hereinafter a "**Cross-Default**").

151. The Omnibus Agreement requires the Golden Portfolio Entities to execute and deliver Deposit Account Control Agreements ("DACAs") to and for the benefit of Nectar.

152. The DACAs are essential to the Omnibus Agreement to ensure that Nectar has control over the deposit accounts held by the Golden Portfolio Entities, in the event of a default under any obligation of the Golden Portfolio Entities to Nectar, thereby securing Nectar's interests in each of the Cash Flow Payments to be provided by the Golden Portfolio Entities.

153. The deadline for the Golden Portfolio Entities to execute and deliver the DACAs was July 17, 2025.

154. The Golden Portfolio Entities failed to execute and deliver the DACAs by July 17, 2025.

155. Plaintiff notified the Golden Portfolio Entities of the failure to deliver the DACAs and attempted to work with them to resolve the issue through mid-

September 2025.

156.   To date, the Golden Portfolio Entities have not executed and delivered the DACAs to Nectar.

157.   The failure by the Golden Portfolio Entities to execute and deliver the DACAs constitutes a default and material breach of the Omnibus Agreement.

158.   The failure to execute and deliver the DACAs and that breach of the Omnibus Agreement constitutes a Cross-Default.

159.   Failure to make Preferred Payments pursuant to the Grand Pointe LLC Amended OA was also a default under the Omnibus Agreement and constituted a Cross-Default.

160.   Selling an asset of Grand Pointe LLC without first obtaining the express written consent of the holders of a majority of the Preferred Units (Nectar) was also a default under the Omnibus Agreement and constituted a Cross-Default.

161.   Failure to make Preferred Payments pursuant to the Mountain Brook LLC Amended OA was also a default under the Omnibus Agreement and constituted a Cross-Default.

162.   Defendants' breaches of the Grand Pointe LLC Guaranties were also defaults under the Omnibus Agreement and constituted Cross-Defaults.

163.   Defendants' breaches of the Mountain Brook LLC Guaranties were

also defaults under the Omnibus Agreement and constituted Cross-Defaults.

164.    The Cross-Defaults triggered Nectar's rights and remedies under the Omnibus Agreement.

165.    The Cross-Default of the Omnibus Agreement allows for full acceleration of the Total Principal Amount.

166.    As of March 23, 2026, the amount of the default is $5,052,175.48.

## COUNT I

### Breach of Contract Against Guarantors

167.    Plaintiff repeats and realleges the preceding Paragraphs set forth above as if fully set forth herein.

168.    Pursuant to the Broad St LLC Amended OA, each Guarantor guaranteed all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees, and interest related thereto.

169.    Pursuant to the Broad St LLC Guaranties, Guarantors agreed to unconditionally guarantee payment to Nectar of all amounts owed under the Broad St LLC Amended OA.

170.    Broad St LLC has defaulted on and is in material breach of the Broad St LLC Amended OA.

29

171. Therefore, Guarantors are liable under the Broad St LLC Amended OA and Guaranties for the entirety of Broad St LLC's outstanding obligations for Preferred Distributions under the Broad St LLC Amended OA to Nectar.

172. Nectar is entitled to recover from Guarantors all amounts owed by Broad St LLC under the Broad St LLC Amended OA.

173. Pursuant to the Oakwood LLC Amended OA, each Guarantor guaranteed all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees, and interest related thereto.

174. Pursuant to the Oakwood LLC Guaranties, Guarantors agreed to unconditionally guarantee payment to Nectar of all amounts owed under the Oakwood LLC Amended OA.

175. Oakwood LLC has defaulted on and is in material breach of the Oakwood LLC Amended OA.

176. Therefore, Guarantors are liable under the Oakwood LLC Amended OA and Guaranties for the entirety of Oakwood LLC's outstanding obligations for Preferred Distributions under the Oakwood LLC Amended OA to Nectar.

177. Nectar is entitled to recover from Guarantors all amounts owed by Oakwood LLC under the Oakwood LLC Amended OA.

30

178. Pursuant to the Grand Pointe LLC Amended OA, each Guarantor guaranteed all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees, and interest related thereto.

179. Pursuant to the Grand Pointe Guaranties, Guarantors agreed to unconditionally guarantee payment to Nectar of all amounts owed under the Grand Pointe LLC Amended OA.

180. Grand Pointe LLC has defaulted on and is in material breach of the Grand Pointe LLC Amended OA.

181. Guarantors are liable under the Grand Pointe LLC Amended OA, Guaranties, and Omnibus Agreement for the entirety of all outstanding obligations under the Omnibus Agreement.

182. Pursuant to the Mountain Brook LLC Amended OA, each Guarantor guaranteed all payment obligations of the Company with respect to the Preferred Units, including the obligation of the Company to pay all Preferred Distributions, late fees, Default fees, and interest related thereto.

183. Pursuant to the Mountain Brook Guaranties, Guarantors agreed to unconditionally guarantee payment to Nectar of all amounts owed under the Mountain Brook LLC Amended OA.

31

184.  Mountain Brook LLC has defaulted on and is in material breach of the Mountain Brook LLC Amended OA.

185.  Guarantors are liable under the Mountain Brook LLC Amended OA, Guaranties, and Omnibus Agreement for the entirety of all outstanding obligations under the Omnibus Agreement.

186.  Nectar is entitled to recover from Guarantors all amounts owed under the Omnibus Agreement.

## COUNT II

### Attorney's Fees and Expenses

187.  Plaintiff repeats and realleges the preceding Paragraphs set forth above as if fully set forth herein.

188.  Pursuant to the terms of the Broad St LLC Amended OA and Guaranties, Defendants have agreed to pay all expenses, including reasonable attorney's fees and costs, incurred by Nectar to enforce the Broad St LLC Amended OA and the Guaranties.

189.  Pursuant to the terms of the Oakwood LLC Amended OA and Guaranties, Defendants have agreed to pay all expenses, including reasonable attorney's fees and costs, incurred by Nectar to enforce the Oakwood LLC Amended OA and the Guaranties.

190.    Pursuant to the terms of the Grand Pointe LLC Amended OA and Guaranties, Defendants have agreed to pay all expenses, including reasonable attorney's fees and costs, incurred by Nectar to enforce the Grand Pointe LLC Amended OA and the Guaranties.

191.    Pursuant to the terms of the Mountain Brook LLC Amended OA and Guaranties, Defendants have agreed to pay all expenses, including reasonable attorney's fees and costs, incurred by Nectar to enforce the Mountain Brook LLC Amended OA and the Guaranties.

192.    Nectar is also entitled to recover its reasonable and necessary attorneys' fees and expenses from Defendants under O.C.G.A. § 13-6-11 as Defendants acted in bad faith, have been stubbornly litigious, and/or have caused Plaintiff unnecessary trouble and expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

a.    Plaintiff be awarded judgment against Defendants for damages in an amount to be proven at trial for the full amount due and owing as set forth above;

b.    Plaintiff recover from Defendants its expenses of this litigation, including attorney's fees, as authorized by the above referenced Agreements, Guaranties, O.C.G.A. §13-6-11, and any other applicable rule or law;

33

c.      Plaintiff be awarded prejudgment and post-judgment interest at the maximum rates allowed by law; and

d.      Plaintiff have such other and further relief against Defendants to which it is entitled.

Respectfully submitted this 24th day of March 2026.

/s/ Lewis P. Perling
Lewis P. Perling
Georgia Bar No. 572379
lperling@clarkhill.com
Clark Hill PLC
3630 Peachtree Road N.E.
Suite 700
Atlanta, GA 30326
470.845.0207 (phone)

Counsel for Plaintiff

34